## TAUSSIG et al. v. BODE & HASLETT.*

### S. F. No. 1572; March 1, 1901.

#### 64 Pac. 108.

**Warehousemen—Loss by Leakage.—Barrels of Spirits were in** Apparently good condition when received at defendant's warehouse for storage. Six weeks later defendant discovered they were leaking, and immediately notified plaintiff, who found excessive loss by leakage. The evidence showed that the leakage was caused by defective cooperage, but there was no evidence that the barrels were improperly piled, or that the warehouse was improperly constructed, or subject to improper drafts by winds or otherwise, or that it was

*For subsequent opinion in bank, see 134 Cal. 260, 86 Am. St. Rep. 250, 54 L. R. A. 774, 66 Pac. 259.

defendant's duty to continuously inspect them, or that there was any such usage among warehousemen. Held, insufficient to support a verdict that the loss was due to defendant's negligence.[1]

APPEAL from Superior Court, City and County of San Francisco; William R. Daingerfield, Judge.

Action by Rudolph Taussig and others against Bode & Haslett, a corporation. From a judgment for plaintiffs and an order denying a new trial defendant appeals. Reversed.

Geo. T. Wright for appellant; Reinstein & Eisner for respondents.

PER CURIAM.—Action to recover damages for loss from sixty-four barrels of spirits deposited in defendant's warehouse. The case was tried before a jury. Plaintiffs recovered a verdict. Defendant made a motion for a new trial, which was denied, and this appeal is from the judgment and order denying the defendant's said motion. It is claimed by defendant, and we think correctly, that the evidence is insufficient to justify the verdict. The defendant is and was at all the times mentioned in the complaint engaged in the business of keeping a bonded warehouse. It is alleged in the complaint that about the twentieth day of January, 1896, the defendant, for hire, received on storage from plaintiffs sixty-four barrels of spirits, for the purpose of safely storing and keeping, and returning the same upon demand; that "defendant did not well or safely or properly store, handle, keep or return said barrels or packages, and said spirits contained therein, but, on the contrary, said defendant improperly, carelessly and negligently stored, handled, and kept said barrels or packages and said spirits, and in consequence of said carelessness and negligence, and of said improper handling and storage of said barrels or packages, . . . . a large quantity of said spirits was permitted to leak out of said barrels, and to become lost and destroyed."

The plaintiffs having alleged damage by reason of the negligence of defendant, the burden was upon them to prove such negligence affirmatively: Shear. & R. Neg., 5th ed., sec.

---

[1] Cited in the note in 136 Am. St. Rep. 212, on the duty of warehousemen in the care of property.

57; Schouler, Bailm. & Carr., 3d ed., sec. 23; Jackson v. Sacramento Valley R. R. Co., 23 Cal. 269.

The evidence is substantially without conflict, and shows that on the twentieth day of January, 1896, the spirits arrived at defendant's warehouse, and, upon notification being made to them, plaintiffs sent their agent to inspect the goods. After such inspection the agent reported to defendant that the lot was in proper condition to be piled, and the barrels were at once piled by defendant in the usual method followed by it. The method of handling the barrels and of piling them was shown to be proper. They were stored two tiers in height, and dunnage, or strips of wood, placed between the first bilge hoop and the second bilge hoop for the barrels to rest upon. On March 4, 1896, the defendant for the first time discovered that some of the barrels were leaking, and immediately telephoned to plaintiffs. Plaintiffs went to the defendant's warehouse, and upon receiving the sixty-four barrels found that eight of them showed excessive loss by leakage. One barrel was practically empty, three or four leaking pretty badly, and the others leaking to some extent. The total amount of leakage over and above the ordinary allowance for evaporation was one hundred and eighty-one and one-half running gallons, or two hundred and twenty-five and one-half proof gallons, of the value of $434.50. The plaintiffs immediately sent Nyland and Herbert, two competent parties, to examine the barrels, to determine as to whether or not the cooperage was defective. The witness Nyland testified: "I took the head out of the barrels, and found they didn't have as much glue in as other barrels had. . . . . I found four or five of the joints that were caulked with a kind of string, something like a lamp wick, the same as they use around distilleries and warehouses, and around places where there are leaky joints. . . . . The glue in the barrel stuck in most places, in what I call the most defective places. From my knowledge as an expert, the fact that the gluing did not stick in some places would account to a great extent for the leakage from that barrel." The witness Herbert testified: "The packages I saw needed driving very much. They were shrunk. I could tell from my examination whether the wood from which they were made was or was not properly seasoned. It was not well seasoned. A barrel that was made of such wood as that would be dangerous, and likely to shrink

and cause leakage. I did not make any examination of the inside of those barrels at that time, but about that time I examined the inside of four of them that had the heads out. I found that they were not properly glued.'' The evidence further shows that defendant, during the two years prior to the trial, had on storage in the same warehouse over eighteen thousand packages, and, except the leakage complained of in this action, there was no other leakage in excess of the government allowance, which is known as the ''Carlisle'' allowance.

The above evidence not only fails to show any act of negligence on the part of defendant, but shows that the leakage was the result of the defective cooperage of the barrels from which the leakage occurred. It is claimed that the fact that defendant did not inspect the barrels and endeavor to discover leakage is evidence of negligence. The evidence shows that the barrels were in apparently good condition when received by defendant and placed in its warehouse, and that they remained there only about six weeks. It further shows that in such case there should be ordinarily no leakage. There is no evidence tending to show that it was the duty of defendant to continuously watch and inspect the barrels, or that there is any such usage among warehousemen. The defendant was required to use ordinary care. It was required to use such care and diligence as prudent persons in the same class of business are wont to exercise toward such property or in the management of their own property under like circumstances.

It is further claimed that the two rows of barrels were piled chine to chine, with not sufficient space between them to admit anyone going in between the rows to inspect the ends of the barrels. It does not appear that it is the usage or custom for warehousemen to pile barrels with space sufficient to go between the rows. In fact, the witness Robin testified that he was familiar with the custom of storage of spirits in the bonded warehouses in San Francisco, and that in some of the warehouses they packed the barrels chine to chine. There is no evidence that the warehouse was improperly constructed, or subject to improper drafts by north winds or otherwise. The rule invoked by plaintiffs that a prima facie case is made out against a warehouseman who refuses to deliver property stored with him upon proof of

demand and refusal to deliver, and that the burden is then shifted upon the warehouseman to account for the property, does not apply to the facts of this case. Here there was no refusal to deliver the identical barrels that had been stored. The plaintiffs received the barrels. The leakage had occurred while they were on storage. The question was as to whether the leakage was caused by defendant's want of ordinary care. We cannot say as a matter of law that it was want of ordinary care in defendant not to inspect the separate barrels for six weeks. It would seem to us that if the barrels were properly made, for the purposes for which they were used— the holding of spirits—and were in good condition on the twentieth day of January, 1896, and properly stored in the warehouse, the presumption would be that they would not leak out their contents by the 4th of March, 1896. All the above facts are shown to be true by the record, except that the barrels were properly made. It appears that they were not properly made, and the defective cooperage must have been the cause of the leakage. It is unnecessary to discuss the other questions raised in the record. The judgment and order are reversed.